## COMMONWEALTH *vs.* THOMAS CASEY.

T. being at the point of death, and conscious of her condition, but unable to speak articulately, in consequence of wounds inflicted upon her head, was asked whether it was C. who inflicted the wounds; and, if so, she was requested to squeeze the hand of the person asking the question. Thereupon, she squeezed the hand of the person making the inquiry. *Held,* that under all the circumstances of the case there was proper evidence against C. for the consideration of the jury; they being the sole judges of its credibility, and of the effect to be given to it.

THE defendant was tried before the chief justice and justices *Metcalf* and *Merrick,* May 16th and 17th, 1853, for the murder of Angelina Taylor, at Natick, on the 17th of September 1852; the indictment charging the offence to have been committed by the blow of an axe.

There was evidence tending to show that Mrs. Taylor lingered for more than two days after the fatal blow was given, although she retained her consciousness. The wound was such as to prevent her from speaking, except that in one instance she answered " yes," somewhat inarticulately. She was evidently conscious of what was passing around her, recognized her children and friends, and understood the questions that were put to her, and at the same time was aware that her chance of recovery was hopeless, and that she was at the point of death.

The question was put to her, and the evidence was offered as her dying declarations, whether Casey was the person who injured her, and if so, she was requested to squeeze the hand of the interrogator. Upon this question being put to her, she took her hand out of the bedclothes, grasped his hand, and squeezed it for about half a minute, and then let go. The

counsel for the defence objected to this evidence, but the court admitted it. The importance of the point decided by the court makes it advisable to give the evidence relating to the condition of Mrs. Taylor, and her intelligence and consciousness at the time of her answers, at considerable length.

The attending physician, Dr. Hoyt, testifies as follows :

" I went to the house of Mr. and Mrs. Taylor on the morning of the murder; found Mrs. Taylor lying on the floor in the front room on her right side; spoke to her; she put up her left hand and opened her right eye; I took her by the hand and she attempted to say something with her right eye directed to me; she held her hand out and I took hold of it; she grasped my hand; I spoke to her; she made an effort to speak, but was unable to articulate a word; she had two comforters partly over her shoulders; her lower extremities were bare; removed Mrs. Taylor to the bedroom; the bed in Mrs. Taylor's chamber had been occupied apparently by a person and child; after getting her upon the bed and in attempting to move her bloody clothes, she reached down with her left hand and pulled up the bedclothes in order to prevent exposure; examined the wound and found that it extended from the eyelid six inches across the head; there was also a wound perforating the skin on her shoulder; on her right arm were one or two bruises; the wound upon her head caused death; dressed Mrs. Taylor's wounds; while dressing them she groaned and put her hand against mine; I told her I would be as careful as I could, when she dropped her hand; I asked her if it was Mr. Casey, who worked for her husband, who killed her husband; was conscious at that time, in my opinion, and mortally wounded; I asked her how she felt; she put her hand up to her head; some one made the remark, Doctor, can she get well? I said no, never; I think she heard the remark; she was nearer to me than the person who asked the question. I asked her if it was Casey who injured her and killed her husband, and if it was, to squeeze my hand; she took her hand out of the bedclothes and grasped mine and squeezed it for about half a minute and then let go; at that moment I believe she was conscious, perfectly so;

her eye was directed on me at the time; I thought her con-scious from the expression of her eye and from her appearing to understand what was said; I asked her then if she was in pain; she turned her eye towards me and put her left hand up to her head on the left side. The next interview with Mrs. Taylor was in the presence of Dr. Allston Whitney; I spoke to her and she opened her eyes and directed them to me; I again asked her if it was Mr. Casey, the man who worked for her husband, who gave her the wound; she made an effort to speak, but could not articulate so that I could understand her, and I said if it was he, to squeeze my hand; she did so again; I was satisfied that she was conscious at that time; I was then asked by some one if she could get well, and I answered that it was impossible; I was then close to the bed, not two feet from her; I then requested Dr. Whitney to take her by the hand; a similar interrogatory was put to her again, telling her to squeeze Dr. Whitney's hand. I told her, if she knew where her children were, to squeeze my hand; she did not squeeze it; at that time the bandage over the wound dropped off, and she took it up herself and put it on; her sister-in-law came in; she put her hand out to her; her children came in, she put her hand out and took them by the hand; saw her some two or three times during the day; on Sabbath morning I saw her; and she showed evidences of consciousness then; in the afternoon there was less consciousness; on Monday she seemed to be sinking away; there was then violent inflamma-tion; I last saw her about three o'clock on Monday afternoon. Mrs. Taylor never articulated so that I could understand per-fectly; there was a partial paralysis; she made a noise resembling yes, but it did not satisfy me; her attempts were more indistinct after the first day; the brain protruded through the wound, and in washing the wound a small portion of the brain was washed away; in relation to injuries of the brain taking away consciousness, it would depend on the nature of the wound; all wounds of the brain do not take away con-sciousness."

Dr. Simon Whitney: " Have been a physician for thirty years; saw Mrs. Taylor on Sunday; when I went into the

Commonwealth *v.* Casey.

room there was quite a number present, and she seemed to be asleep; I aroused her; examined the wound superficially, and some one asked me if she could recover. I said no; I then took hold of her hand, and told her if it was the Irishman who worked for her husband who struck her, to press my hand; she pressed it. I then asked her if it was Thomas Casey, and she answered, yes; it was heard by several others in the room, and I turned to them and said it was pretty evident who the murderer was, and soon after left. She articulated the yes plainly; there was a little more hesitancy than usual, but it was a plain yes; such an injury to the brain might partially produce paralysis."

Mrs. Esther E. Jordan: "Knew Mr. and Mrs. Taylor; lived two miles from them; had known them six months; had before lived close to them; went to their house between eight or nine o'clock on the morning after the murder; Mrs. Taylor was on the bed in the bedroom; asked her if she knew me; she looked up, and from the expression of her eyes, thought she did; was there when Dr. Whitney came, and heard him ask her to squeeze his hand, if the Irishman who worked for her husband was the man; I saw her take his hand and squeeze it; Dr. Whitney then asked her if Thomas Casey was the man who struck her, and she answered yes; the answer was distinct enough so that any one in the room could hear it; when the infant child was brought into the room, it pointed its finger and said 'Mamma;' Mrs. Taylor groaned, and as she seemed affected by the presence of the child, it was carried out."

Dr. Allston Whitney: "Visited Mrs. Taylor on Saturday in company with Dr. Hoyt; when by the bedside, was asked whether she could live, and I answered that she could not; I took hold of her hand; Dr. Hoyt said, Mrs. Taylor, if it was the Irishman Casey who killed your husband and struck you, squeeze his hand; she squeezed my hand perceptibly; Mrs. Taylor was then asked to squeeze my hand if she knew where her children were; her hand did not squeeze at all; the children were not in the room at the time; indications of consciousness were apparent, such as replacing the bedclothes

where they were displaced from her person, and putting her hand to her head when asked if she was in pain."

Mrs. Louisa M. Titus : " Went of my own accord at five and a half o'clock on Saturday afternoon to take care of Mrs. Taylor; she showed signs of consciousness when the children were brought to see her; she stretched out her hand as if she wanted to shake hands with them; Ouvra, the eldest, drew back, and said he was afraid of his mother; but little Agnes, the next, shook hands with her; when asked if Casey struck her, she made a noise, as if she was trying to say yes."

Miss Ellen A. Harris : " Knew Mrs. Taylor; lived on the other side of the street; saw her at ten o'clock on Saturday morning; was there when the elder Dr. Whitney asked her if the Irishman killed Ouvra and struck her, and if so, to squeeze his hand, and she distinctly answered yes."

Another witness testified that he saw Mrs. Taylor the morning after the wounds were given ; that she was asked whether she was cold; and that, when thus asked, she opened her left eye, and attempted to draw the corner of her clothing over her shoulders.

*R. Choate & C. R. Train,* for the commonwealth.

*B. F. Butler & G. A. Somerby,* for the defendant.

SHAW, C. J. We appreciate the importance of the question offered for our decision. Where a person has been injured in such a way that his testimony cannot be had in the customary way, the usual and ordinary rules of evidence must from the necessity of the case be departed from. The point first to be established is, that the person whose dying declarations are sought to be admitted, was conscious that he was near his end at the time of making them ; for this is supposed to create a solemnity equivalent to an oath. If this fact be satisfactorily established, and if the declarations are made freely and voluntarily, and without coercion, they may be admitted as competent evidence to go to the jury. But, after they are admitted, the facts of the declarations and their credibility are still for the judgment of the jury.

In regard to the matter before the court, and the admissibility of the signs by Mrs. Taylor, in reply to the questions

put to her, it is to be observed that all words are signs; some are made by the mouth and others by the hands. There was a civil case tried in Berkshire county, where a suit was brought against a railroad company, and the question was, whether a female who was run over survived the accident for any length of time. She was unable to speak, but was asked if she had consciousness to press their hands, and the testimony was admitted. If the injured party had but the action of a single finger, and with that finger pointed to the words yes and no, in answer to questions, in such a manner as to render it probable that she understood, and was at the same time conscious that she could not recover, then it is admissible evidence. It is, therefore, the opinion of the court, that the circumstances under which the responses were given by Mrs. Taylor to the questions which were put her, warrant that the evidence shall be admitted, but it is for the jury to judge of its credibility and of the effect which shall be given to it.