THE STATE OF CONNECTICUT *vs.* ANTONIO MANGANELLA.

Third Judicial District, Bridgeport, April Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 14th—decided June 1st, 1931.

*Rocco Ierardi* and *Harry L. Edlin,* for the appellant (the accused).

*Abraham S. Ullman,* Assistant State's Attorney, with whom, on the brief, was *Samuel E. Hoyt,* State's Attorney, for the appellee (the State).

HAINES, J. The jury could reasonably have found the following facts: The deceased, Cirillo, conducted a grocery and confectionery store in New Haven, and the home of the accused was distant about two hundred and thirty-seven feet therefrom. In the early

afternoon of July 21st, 1928, a fifteen year old daughter of Cirillo, Angelina, was in charge of the store while a girl friend, Rose, was with her. A small son of the accused entered and made a purchase for one cent, giving Angelina therefor, one penny.

Shortly thereafter the accused appeared at the store and demanded of Angelina four cents change, claiming that his son had given a nickel, and upon her denial that she had received a nickel, he called her a crook, and asked for her father, and when informed that he was absent, left the store, returning a few moments later and again demanding four cents, and entered the store and looked around for Cirillo without finding him; becoming further abusive to Angelina, she agreed to give the four cents to avoid further argument, and the accused thereupon sent four of his children to the store for four penny cups of lemonade which were served to them by Angelina; a short time later the accused came again to the store and finding Cirillo was there, he stood in front of the store and challenged him to come outside, opening a large pocket knife which he held in his hand, and calling him a coward and a crook; Cirillo was at the time, cutting bread for a customer, Boggia, and told the accused to go away as he was busy and did not care to argue with him, but after further taunts by the accused, he started to go out but was restrained by Boggia, whereupon the accused shouted "I'll fix you" and went toward his own home and returning in about three minutes, approached the store from the direction of his home and standing in front of the store repeated his abuse of Cirillo, who was still engaged in cutting bread and preparing sandwiches for Boggia, using a bread knife for that purpose; Cirillo then attempted to come out of the store and was urged by Boggia not to do so and not to heed the

taunts of the accused. Boggia also urged the accused
to go away, but he refused and continued to abuse
Cirillo; while Boggia stood against the door to pre-
vent Cirillo from coming out, the accused was stand-
ing about ten feet from the store with his right hand
in the side pocket of his coat; Boggia approached the
accused a second time and asked him to go away but
he refused, and Cirillo then came out of the store
and the accused drew a revolver from the side pocket
of his coat and said "John, I'm going to shoot you"
and fired two shots at Cirillo, who then advanced to-
ward the accused with the bread knife in his hand
while the accused backed away toward an automobile
which stood about fifteen feet from the store, and as
Cirillo closed in on him at this spot and seized the
hand with the revolver in it, he struck the accused
with the knife, whereupon the accused turned and
ran toward his home; after going a short distance,
the accused fired three more shots at Cirillo, one of
which struck a bystander; Cirillo then walked back
into the store while the accused went toward his home.
Cirillo was at once taken to a hospital where it was
found he had two bullet wounds in his body and one
in his hand, and where he died two days thereafter
as a result of these wounds; shortly after the shoot-
ing, the accused was taken to the railroad station by
his brother-in-law and left on the train and did not
come back to New Haven until June 17th, 1930, at
which time he was placed under arrest. The State
also claimed to have proved that Cirillo, knowing
that he was about to die, made a statement concern-
ing the circumstances of the shooting. While the main
features of the foregoing recital of the events of that
afternoon are not in dispute, the accused claims to
have proved that his son did give Angelina a nickel
instead of a penny, and as she did not return any

change after the one cent purchase, he went to the store and asked for Cirillo and finding he was not there, he went away and returned a little later with the same result, and so went home; that shortly afterward he left his home to go to his place of employment, which required him to pass the store, and as he was doing so, Cirillo made offensive remarks about him, and he thereupon requested him to come out and talk things over, but Cirillo was restrained by Boggia, seeing which the accused started on toward his place of employment; that when he was near the automobile he was overtaken by Cirillo, who had the bread knife in his hand, and who pushed him against the automobile and attacked him with the knife, inflicting several wounds upon him, and being thus attacked, the accused drew a gun from his pocket and shot twice at him and broke away from him; that when he thus fired, he believed his life was in danger, that he then started to run toward his home but was pursued by Cirillo, and when he had almost reached the corner of the street he saw Cirillo almost upon him with the knife, and again believed his life was in danger and so fired three more shots at Cirillo. The accused further claimed to have proved that he was employed in delivering bread and at certain times collected money, and since the War he had always carried a gun. He also claimed to have proved that Cirillo had the reputation of being quarrelsome.

Fifteen of the assignments of error (twelve to twenty-six) relate to rulings upon evidence. Counsel for the accused erroneously discuss these rulings by reference to the transcript of evidence. We are confined in our consideration of them, to the statement of the rulings in the finding.

One of the physicians who examined Cirillo soon after he was taken to the hospital, was asked to tell

of his condition and described his wounds, adding, that he was "in a moribund condition" when he arrived. The objection that this was not responsive, was properly overruled. No ground of exception to the second ruling was stated and it is therefore not entitled to consideration. *State* v. *Perretta,* 93 Conn. 328, 339, 106 Atl. 690; *Peterson* v. *Thomas,* 105 Conn. 625, 626, 136 Atl. 687. An attending physician was asked if he had any conversation with Cirillo at the hospital as to whether he expected to die. This question was clearly admissible as preliminary to a claim of dying declaration. The witness was then asked what he said to Cirillo relative to his dying. The objection that this was leading was untenable. Counsel for the accused discusses objections and exceptions taken to a dying declaration of Cirillo. It appears that Dr. Mongillo in the presence of Cirillo, the coroner and a stenographer at the hospital, talked with Cirillo in the Italian language, the coroner asking questions and the doctor, having first been sworn, interpreting them and Cirillo's answers, which were all taken down by the stenographer. Cirillo was thus asked if he realized that he was dying and answered "Yes." When again asked if he knew he was at the point of death and was liable to die shortly, he again answered "Yes." After Dr. Mongillo had testified, the coroner took the stand as a witness and gave the questions and the answers thus obtained from Cirillo. In this connection the fourteenth assignment of error refers to section VII of the finding which recites the above examination of Dr. Mongillo and the question, "Now, did you talk with Mr. Cirillo, have any conversation with him, as to whether he expected to live or die?" and continues, "The attorney for the accused objected to this question on the ground that the accused was not present; that it would be hearsay; that it called for a dy-

ing declaring that would be limited to identification of the assailant or the manner in which the injuries were received." It is apparent that the objections said to have been made were not applicable in any way to this particular question to which they appear to refer. Again, the sixteenth assignment was to the denial of a motion to strike out the testimony of Dr. Mongillo as shown in section IX of the finding. This recites that, at the conclusion of his testimony, the accused moved that all of it be stricken out "because of the fact that the accused was not present, and that if it is a dying declaration, it does not meet the requirements." Apparently it was the purpose of counsel for the accused to except to the admission of the claimed dying declaration. The doctor did not testify to the contents of the so-called dying declaration; this was done by the coroner, and the seventeenth assignment is for failure to strike out his testimony as given in section X of the finding, where it is said that the statement of Cirillo thus given, was objected to on the ground that it was not a dying declaration and "did not measure up to what the law requires of dying declarations, and that the accused was not present, and that it was hearsay," and that the objection was overruled, the statement admitted and the accused excepted.

If, notwithstanding the somewhat confused condition of the record, these objections to the statements of Cirillo were properly made and exceptions taken, we must assume that the court was satisfied that Cirillo at the time was in actual danger of death without hope of recovery. His own statement to that effect and the testimony of the physician, furnish ample basis for that conclusion. "A statement made by the deceased as to the cause of his death, or as to any of the circumstances of the transaction which resulted

in his death, is admissible, if it appears to the satisfaction of the judge that when the statement was made the deceased was in actual danger of death, and had given up all hope of recovery." Clark, Criminal Procedure, p. 525, § 209. The statements so made are admissible if they are statements which the deceased could have made if testifying as a witness and if they tend to prove the fact of the crime, the identity of the criminal and other facts which are within the *res gestæ*. Underhill, Criminal Evidence (3d Ed.) § 180; *State* v. *Yochelman*, 107 Conn. 148, 153, 139 Atl. 632. Some of the statements made by Cirillo were not of this character and were plainly inadmissible. Upon attention being called to this fact, the court stated that that would be explained to the jury, and it appears that it was done, the court pointing out to them the statements which were objectionable and directing that they be disregarded. This left the accused no legal ground for complaint on this score. *State* v. *Buonomo*, 88 Conn. 177, 182, 90 Atl. 225; *State* v. *Reed*, 137 Mo. 125, 38 S. W. 574; *State* v. *Bridgman*, 51 Wash. 18, 97 Pac. 1096, 1097, 1098. A dying declaration may properly take the form of questions and answers, and the presence or absence of the accused is of no significance. *State* v. *Perretta*, 93 Conn. 328, 337, 105 Atl. 690.

The question put to Angelina as to what she testified before the coroner was, under the circumstances, harmless in any event since it was in fact put and answered later.

The two questions put to Adelina Pizzorusso were properly excluded, as was the question put to the accused whether he gave his children money at a certain time. The question as to the ages of his six children and the further question whether he served in the

War, were without such material relevancy as to make their exclusion erroneous.

The accused as a witness upon direct examination stated he had always carried a revolver since the War and was then asked "Why?" Upon objection, this question was excluded. The fact that he had carried a revolver since the War was in evidence and the relevancy of that fact to the situation on the day of the shooting, is not questioned. So far as appears however, the reason for carrying it was quite immaterial, and the ruling was correct. If counsel felt that this reason was a relevant fact of importance, the exception should have been so amplified that its relevancy was made to appear. Practice Book, Rules for Appellate Procedure (New) § 14; *State* v. *Mosca,* 90 Conn. 381, 97 Atl. 340.

Of the remaining twenty-eight assignments of error, three relate to the refusal to set aside the verdict, fourteen to the charge as made, and eleven to the failure to charge in various particulars. Seven of the requests to charge relate to the subject of self-defense. The court was requested to charge that "a man who is assaulted under such circumstances as to authorize a reasonable belief that the assault is made with a design to take his life or inflict extreme bodily injury, will be justified in both the civil and criminal law, if he kill or attempt to kill his assailant." This is in the exact language of a request made in the case of *State* v. *Bailey,* 79 Conn. 589, 65 Atl. 951, and this court said it was inadequate unless qualified, and held the charge given by the trial court substantially correct. That charge included the provisions that the person attacked must use all the means in his power to save his own life, such as retreating when he can, or disabling his adversary without killing him. It was pointed out that no greater force must be used than necessary to

repel the attack, and if the force used was in fact unnecessary for that purpose, it would be evidence of malice and might make the crime murder.

The court was further asked to charge, in effect, that if the accused had a reasonable belief and apprehension in his mind that Cirillo was about to attack him with the knife and that he was in danger of serious bodily harm, he "was justified in taking the revolver out of his pocket and shooting the deceased." In another request, the court was asked to charge that if the accused did not take the revolver from his pocket until Cirillo was in close proximity with the knife and making lunges at him, and if he reasonably believed that great bodily harm was about to be done to him, the accused then had a right to stand his ground and had no duty to retreat further than he did, but was justified in killing Cirillo. These two requests also leave out of consideration the adoption of means of escape which may have been open to the accused and the possibility of saving his own life without killing Cirillo. The refusal of the court to charge in the language of these requests was justified. Substantially the same considerations apply to the next two requests to charge upon this subject. An inadequate statement of the law as applicable to the claimed facts, may properly be refused. *State* v. *Bissonnette,* 83 Conn. 261, 76 Atl. 288. Of the two remaining requests upon this subject, the seventh and ninth, one was in fact charged by the court in the exact words of the request, and one in exact conformity but in slightly different language. The charge which the court gave upon the subject of self-defense is in close accord with the charge given by the trial court in the *Bailey* case, *supra*—a charge which this court approved as substantially correct. It was properly applied to the facts

claimed to have been proved, was adapted to the issues and a sufficient and proper guide for the jury.

The accused also requested two charges to the effect that if the jury found he apparently withdrew from the conflict near the automobile but was then chased by Cirillo as he ran toward his home with the intent to stab him with the knife, his right of self-defense was revived, even though he had himself begun the conflict, but the court did not charge upon the subject of "abandonment" by the accused which was thus raised. This refusal was justifiable if it did not reasonably appear upon the facts claimed by the accused, that he had in fact abandoned the conflict. We think there is much doubt whether the evidence of the accused so indicates. It is unquestioned that the accused still held the revolver in his hand. If he had thrown it aside and clearly indicated to Cirillo that he did not intend to carry the conflict further, or if he had retreated to a point where it could not have been used to harm Cirillo, a different situation would have been presented. What he in fact did, did not indicate to Cirillo that he did not still intend to make use of the revolver to kill him, as in fact he did use it before he was out of range. A very similar state of facts arose where a claim of abandonment was made, in a recent case in this court. There the accused had entered the store of Jacobs, armed with a revolver for the purpose of robbery, but claimed that he was attempting to leave by the front door when he shot Jacobs in self-defense. We said: "It is to be noted, that at no time prior to the homicide did the accused indicate by spoken word that he had abandoned his felonious purpose, nor indicate this by his conduct. It is true he was backing away from Jacobs and going toward the front door, but from the moment of his entrance into the store he held his revolver in

his hand, and from the moment when he advanced upon Jacobs demanding his money until the fatal shot he kept the revolver pointed at Jacobs. If the accused ever entertained a purpose, to abandon his attempt at robbery, and the use of his revolver for the purpose of intimidating Jacobs into yielding to his demands, it was a mere mental purpose unexpressed by spoken word or conduct; of such the law takes no cognizance. . . . The abandonment must have included the actual abandonment of the use of the revolver. The conduct of the accused must have coincided with his spoken word before the question of abandonment of his felonious purpose could arise. The law deals with reasonable probability; it will not regard a defense of this character when the spoken word at the time of the commission of the offense, or the spoken word after the offense, is not supported, reasonably, by the conduct of the accused at the time of the offense. There must be a substantial act or acts which make reasonable proof that the abandonment is real and not feigned." *State* v. *Feltovic,* 110 Conn. 303, 309, 310, 147 Atl. 801. We have deemed it advisable, since this claim is not infrequently advanced in criminal cases, to again call attention to the requirements of proof of abandonment; but even if it were conceded that there was an abandonment in the present case, we hold the failure of the court in this instance to charge in reference to that circumstance, was not erroneous, and this is for the reason that the charge upon self-defense was a full and correct one which was clearly applicable to the situation when the final shots were fired, and the court could hardly have done more, in response to this request, than reiterate what had already been said on the law of self-defense.

There was a request upon the general burden of proof in criminal cases and upon the requirement that

the jury should find the lesser crime where there was a reasonable doubt between a greater and a lesser crime. This is all stated in the charge with sufficient fullness and accuracy, so we cannot hold that the jury were left without direction, or misled, to the prejudice of the rights of the accused.

Another request was made upon the burden of proof where there was a claim of self-defense. This assignment as a reason of appeal on the allegation that the court refused to charge as requested is without foundation. As in other instances to which we have referred, the court did charge in the very words requested.

There are two assignments of error, the thirty-third and the thirty-ninth, which are merely to the court's recital of the claims of fact made by the State, and three, the thirty-fourth, thirty-fifth and fortieth, which are to comments of the court upon claims of fact. We see nothing erroneous in these paragraphs when read in connection with the rest of the charge. Nor do we see anything improper or incorrect in the statement of the test to be applied to the evidence in the twenty-eighth assignment.

The court correctly defined the different degrees of crime to be considered in this case, and explained the elements of malice, of wilfulness, deliberation and premeditation and correctly stated to the jury the rights of the accused if under a reasonable belief that his life was in danger. A study of the entire charge satisfies us that the rights of the accused were not abridged or overlooked at any point. This sufficiently covers the six remaining assignments of error in the charge, viz: the twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-seventh and thirty-eighth.

Those assignments relating to the refusal of the court to set aside the verdict, have been largely cov-

ered by the foregoing discussion of various features of the case. In the brief of counsel for the accused the argument is largely based upon that version of the facts given by the accused himself. This course we cannot follow. We read the entire record of evidence and determine whether there is a reasonable basis therein to support the verdict and we do find ample justification in this record, for the conclusion which the jury reached. There is evidence which they could reasonably have believed, that the accused went once or twice to the store in an angry mood, and continued his visits until he found Cirillo, and then, by verbal abuse and taunts, endeavored to draw him out of the store for the purpose of doing him bodily injury. When Cirillo finally attempted to come out, he had the bread knife in his hand, and the accused, apparently unwilling to risk an encounter under these circumstances, then said, "I'll fix you," left, and came back in a few moments with his hand on a revolver in his pocket, and renewed his abuse of Cirillo, and when the latter came out of the store the accused said, "John, I'm going to shoot you," and did so shoot twice. When Cirillo grappled with him, he broke away and, when a considerable distance from Cirillo, turned and fired the remaining shots at him. The jury evidently believed this version of the affair which was clearly developed by the evidence. Under these circumstances there is little room for the accused to set up the defense of self-defense or lack of malice. The action of the court in refusing to set aside the verdict was correct. A verdict should be set aside only when it is manifestly unjust and so palpably against the evidence as to indicate that the jury must have made some mistake in the application of legal principles, or were influenced by lack of knowledge or understanding, or by corruption, prejudice or partiality. *State* v.

*Buxton,* 79 Conn. 477, 480, 65 Atl. 957; *State* v. *Chin Lung,* 106 Conn. 701, 704, 139 Atl. 91. We may add, that the verdict of second rather than first degree murder, suggests a lenient attitude on the part of the jury.

There is no error.

In this opinion the other judges concurred.