STATE OF CONNECTICUT *v.* ANTHONY J. WILKINSON, JR.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, JS.

---

452

Argued October 12, 1978—decision released January 16, 1979

*Stephen E. D. Fournier,* with whom was *Michael R. Sheldon,* for the appellant (defendant).

*Abbot B. Schwebel,* assistant state's attorney, for the appellee (state).

LOISELLE, J. The defendant in the present case was charged with misconduct with a motor vehicle, in violation of General Statutes § 53a-57 (a), and was convicted, along with his codefendant (see *State* v. *Varricchio,* 176 Conn. 445, 408 A.2d 239), by a jury. The defendant has appealed from the judgment.

From a review of the evidence, the jury could have found the following: On March 5, 1976, at

about 9:52 p.m., there was an accident near Ellington Center in Ellington. Two cars were directly involved, a 1975 Buick LeSabre operated by James L. Daigle and a 1972 Ford pickup truck operated by the codefendant, Wayne A. Varricchio. The accident was a head-on collision. Daigle subsequently died as a result of injuries sustained in the collision.

Prior to the accident, Wilkinson, Varricchio and several other persons were in the parking lot of a shopping center in Ellington. Stephen L. LaVoie, who was at this time driving Varricchio's truck, testified that he asked Wilkinson if he wanted to race. Wilkinson answered "Let's go." At this point Varricchio took over driving the Ford truck. Wilkinson was driving a Dodge van.

On or near route 83, both Varricchio and Wilkinson stopped their vehicles and talked, after which both vehicles headed south on route 83. They intended to race. They had agreed that the starting signal for the race would be three beeps of the horn.

The first attempt to race was aborted. The second time the race started, Varricchio was in the left lane on route 83, which is a two-lane highway. The two vehicles accelerated rapidly and traveled together for about fifty feet. Wilkinson pulled ahead and Varricchio ducked back into the right lane. Varricchio caught up with Wilkinson very quickly. He then downshifted to slow down. Daigle's car was traveling eastbound prior to the collision. Varricchio was traveling westbound in the Ford pickup truck. The pickup truck crossed into the eastbound lane after its brakes locked up at the end of 400 feet of skid marks. The point of impact was totally in the eastbound lane. Several witnesses testified that the truck was in the left lane and the van was

in the right lane as they approached Ellington Center. There was also testimony to the effect that Wilkinson's van had been in contact with the Varricchio truck just prior to the fatal crash.

All of the errors claimed relate to the charge to the jury. The rule is well settled in this state that a charge does not rise or fall on individual, isolated sentences, but must be looked at as a whole. This court laid down the test in *State* v. *Rose,* 169 Conn. 683, 687-88, 363 A.2d 1077: "For an erroneous portion of a charge to be reversible error, the court must consider the whole charge and it must be determined, in appeals not involving a constitutional question, if it is reasonably probable that the jury were misled; *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147; *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; *Penna* v. *Esposito,* 154 Conn. 212, 215, 224 A.2d 536; *Allard* v. *Hartford,* 151 Conn. 284, 292, 197 A.2d 69."

The first assignment of error pressed by the defendant is that the trial judge misled the jury by explaining the elements of simple negligence before giving the statutory definition of criminal negligence. He claims that this order of instructions left the jury with the impression that criminal negligence is merely a degree of simple negligence and is in all material respects equivalent to gross negligence.

Criminal negligence is an element of misconduct with a motor vehicle,[1] the offense with which both

[1] "[General Statutes] Sec. 53a-57. MISCONDUCT WITH A MOTOR VEHICLE: CLASS D FELONY. (a) A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle or in consequence of his intoxication while operating a motor vehicle, he causes the death of another person. . . ."

Wilkinson and his codefendant, Varricchio, were charged. In § 53a-3 (14) of the General Statutes, criminal negligence is defined as follows: "[A] person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

After giving a general explanation of the respective duties of the court and jury, the trial judge read § 53a-57 and then went on to say that he would explain what "negligence" was before he attempted to delineate what criminal negligence was. He defined simple negligence, breaking it down into a breach of a common-law duty or a breach of a statutory duty. He then instructed the jury to measure the defendants' conduct against the standard of care "that a reasonably prudent person under the same circumstances would have used."

The court explained that it had been concentrating on simple negligence because it was a component of criminal negligence and if the jury could not find that the defendants had been negligent, they could stop there in their deliberations: "If you find that the state has not proven that the accused was negligent, either one of them, you may need consider the particular charge no further, and you will find both the accused not guilty or either one of them not guilty, whichever you find." The court then went on to say: "However, if — even if you do find the accused was negligent, either one was negligent,

that in and of itself is not a basis for a verdict of guilty of the crime as charged here. It is only a particular degree of negligence that makes one guilty of that crime, a degree which is characterized by the word, 'criminal negligence.' " Thus, the court did point out explicitly that a finding of simple negligence alone was not sufficient to support a conviction.

The defendant further argues that the court misled the jury by implying that criminal negligence was equivalent to simple negligence somehow elevated in degree by unspecified aggravating circumstances. In so arguing, the defendant is taking bits and pieces of the charge out of context. The law is clearly established that the charge must be read as a whole, and error cannot be predicated on detached sentences or portions. The court made the difference very clear by first reading the definition of criminal negligence contained in § 53a-3 (14) and then adding: "[C]riminal negligence is not mere ordinary negligence. It differs in that a certain state of mind is required, and I have told you about that certain state of mind by reading you those definitions."

The defendant urges that a juror might readily have seized upon the less complex standard, that of simple negligence elevated in degree, instead of the statutory standard because of the court's detailed explanation of simple negligence. As the above quoted passages indicate, the charge gave the jury a clear understanding of the difference involved between simple negligence and criminal negligence and gave proper guidance in distinguishing one from the other. *State* v. *Williams,* 169 Conn. 322, 335, 363 A.2d 72; *State* v. *Vars,* 154 Conn. 255, 269, 224 A.2d 744.

The defendant also objected to the court's mention of gross negligence as the factor distinguishing negligent homicide with a motor vehicle[2] from misconduct with a motor vehicle. The defendant argues that gross negligence is an obsolete standard in Connecticut and that a reasonable jury could have confused gross negligence with criminal negligence. After discussing the two statutes, the court pointed out: "You will immediately note a great distinction between this . . . statute [General Statutes § 53a-58a] and the one under which the accused are charged. Under the statute under which the accused are charged, which is entitled 'Misconduct with a Motor Vehicle,' an accused is not guilty, so far as negligence is concerned, unless you find that that negligence was criminal negligence." In light of this qualifying remark, made immediately after the court's reference to the negligent homicide statute, it is not likely that a reasonable jury would have been misled. *State* v. *Tropiano,* 158 Conn. 412, 433, 262 A.2d 147.

The defendant claims that the court erred in instructing the jury that a violation of § 14-219 (a) (1)[3] of the General Statutes is negligence. He bases his argument on the fact that the decedent was not an occupant of either of the defendants' vehicles, but was driving his own car at the time of the accident.

The court never equated a violation of the statute with criminal negligence. In citing § 14-219 (a) (1) it was giving an example based on the facts of the case from which the jury could find negligence. The

[2] General Statutes § 53a-58a.
[3] General Statutes § 14-219 (a) (1) prohibits the operation of a motor vehicle upon any highway at such a rate of speed as to endanger the life of any occupant of that vehicle.

court made it very clear that negligence must be established first and that one way of finding it was a statutory violation. Only then could the jury go on to the further test of criminal negligence.

The defendant argues that the jury could not find negligence per se even if there was a violation of § 14-219 (a) (1) because the decedent was not an occupant of either of the defendants' vehicles and that the duty specifically imposed by the statute is owed only to that class of persons intended to be protected by it. This is a misreading of the court's intention and the law. As noted above, the court was using the statutory violation as an example of conduct that constituted negligence. What the defendant is arguing is tort liability, not negligence. It is only in that context that the doctrine of a duty being owed only to that class of persons intended to be protected by the statute is relevant.

As the wording of the charge itself indicates, the trial court made it clear that criminal negligence, not just simple negligence, had to be found before a guilty verdict could be returned.[4] The court therefore did not deprive the defendant of due process by relieving the state of its burden of proving all the essential elements of criminal negligence beyond a reasonable doubt. It did comply in all respects in

[4] The court gave the following instruction: "[A] defendant is criminally negligent in the operation of his vehicle if the state has proven beyond a reasonable doubt that the defendant's criminal negligence was the cause of the death of a person. To determine whether the defendant was criminally negligent in operating his motor vehicle, you must find that the state has proven each of the following elements beyond a reasonable doubt: That the defendant's actions at or before the accident scene created a substantial, unjustified risk that a death would occur; that the defendant failed to perceive that risk; that a reasonable man in the same circumstances as the defendant would have known that he was creating a substan-

its duty fully to guide the jury to a correct verdict. *Siladi* v. *McNamara*, 164 Conn. 510, 515, 325 A.2d 277.

The defendant's third claim of error is that the trial court incorrectly instructed the jury on the issue of concurrent liability. The heart of the defendant's argument is that the charge taken in its entirety left the jury with the impression that both defendants could be convicted if the jury found that only one of them was criminally negligent. The defendant claims that the court's instructions requiring the jury to impose criminal liability vicariously under § 53a-57 of the General Statutes was a misstatement of the law.

*State* v. *Alterio*, 154 Conn. 23, 220 A.2d 451,[5] states the controlling law in this area. In *Alterio*, this court held that contact between motor vehicles was

tial, unjustified risk that a death would occur; that the defendant's failure to perceive that risk was a gross deviation from the standard of care of a reasonable person under the same circumstances.

"You will recall that I said to you that the state has the burden of proving every element of the crime beyond a reasonable doubt, and this is why I have just outlined to you what those elements are.

"If you decide that a substantial and unjustifiable risk of death existed, then you must determine that the defendant failed to perceive that risk. You may consider the defendant's actions and manner of driving at or near the scene of the accident in deciding whether or not the defendant perceived that risk."

[5] *State* v. *Alterio*, 154 Conn. 23, 220 A.2d 451, involved a death resulting from an automobile race on a city street. The codefendants, Alterio and DeLoma, who were tried together, agreed to engage in an automobile race at night on a public street in violation of § 14-224 (b) of the General Statutes. As they approached an intersecting street at high speeds, Alterio applied his brakes, swerved off the road and stopped. DeLoma did not stop and collided with a car proceeding through the intersecting street, as a result of which a passenger in that car was killed. Both defendants were held guilty of misconduct with a motor vehicle, in violation of General Statutes § 53-17 (the precursor of General Statutes § 53a-57).

not necessary in order to violate the statute and that all the statute required was that the gross or wilful misconduct or gross negligence of the operator caused the death.

In *Alterio* (pp. 29–30) this court set the standard for proximate cause in the racing situation: "It was the state's burden to prove that a proximate cause of the death was the unlawful acts of the defendants or of either of them. *State* v. *Leopold*, 110 Conn. 55, 62, 147 A. 118; *State* v. *Campbell* [82 Conn. 671, 675, 74 A. 927]. Consequently, under the circumstances of this accident, only if the conduct of the driver of the DeSanty car was shown to be the independent and efficient cause of his father's death would the state fail to meet its burden. If, however, the requisite causal connection was established between an unlawful act of either of the defendants and the death, then both defendants, who joined in the common design to commit the unlawful act, would be responsible. *State* v. *McCarthy*, 133 Conn. 171, 173, 49 A.2d 594; *State* v. *Leopold,* supra, 63. 'Every person is held to be responsible for the natural consequences of his acts, and if he commits a felonious act and death follows, it does not alter its nature or diminish its criminality to prove that other causes co-operated to produce that result.' *State* v. *Leopold,* supra, 61. It was incumbent upon the court, therefore, to point out to the jury that in order to establish the guilt of the defendants the state was required to prove the essential element of causation and the effect of participation by Alterio in the common undertaking which ended fatally."

The charge given[6] by the trial court was taken from *Alterio*, which outlines the law in this state on proximate cause and concurrent liability. As

[6] " 'Proximate cause' is that cause or act which, in the natural sequence, unbroken by any other intervening act, produced the death and without which the death would not have resulted. In other words, the act to be the proximate cause must be a substantial factor in producing the death, and to be a substantial factor in producing the death the act must have continued down to the moment of the injury or the death, or at least down to the setting in motion of the final active, injurious force which materially produced or preceded the death.

"This does not mean the law recognizes only one proximate cause of the death, consisting of one — only one act or the conduct of only one person. The acts or omissions of two or more persons may work concurrently as the efficient causes of a death, and in such case each of the participating acts or omissions is regarded in law as a proximate cause.

"When the negligent acts or omissions of two or more persons, whether committed independently or whether in the course of jointly directed conduct, contribute concurrently and as proximate causes to the death of another, each of such persons may be held to be liable. This is true regardless of the relative degree of contribution.

"When the wrongdoing of two persons is the proximate cause of the death, they are both liable without regard to whether or not one may be more at fault than the other. If the illegal conduct of such persons — of such defendants here was the proximate cause of the collision, they would be liable jointly and severally. If you find that the act of either one of them or both of them was a proximate cause of the death, it is not necessary to the establishment of liability that there be any contact between the particular vehicles involved.

"As I have indicated, if two or more persons participate in a crime, they are equally responsible, though it was the immediate act of one who actually brought about the crime. Participation means not only actively sharing in the final commission but in doing anything to aid and assist and to inspire or to encourage the conduct which caused it.

"So that, in dealing with the entire matter, it is up to the state to prove to you that the defendants, either or both, operated the car in consequence of which either by criminal negligence caused the death of this particular party.

"If you find the state has proven beyond a reasonable doubt all of the particular elements of the crime, then you will find the accused guilty as charged. If you find that they have not proven all the elements of the crime charged beyond a reasonable doubt, then you will find them not guilty as charged."

counsel for the codefendant acknowledged in oral argument, in order for this court to find error as claimed, *Alterio* would have to be overruled. There is no cogent reason why this should be done.

In the same context, the defendant argues that the wording of the charge on concurrent liability[7] misled the jury. His claim is that this charge left the jury with the clear impression that conviction on the charged offense could properly be predicated upon a finding as to only one of the defendants of criminal negligence causing death.

There was evidence presented which was not controverted that both defendants had agreed to race. On the basis of this evidence the charge taken in its entirety was correct in law, adapted to the issues and sufficient to guide the jury. *State* v. *Williams*, 169 Conn. 322, 336, 363 A.2d 72.

The defendant further argues that the trial court in its charge on the issue of causation failed to instruct the jury as to the proper application of the law to the particular facts of the case. His claim is that the court's charge to the jury on the

---

[7] "As I have indicated, if two or more persons participate in a crime, they are equally responsible, though it was the immediate act of one who actually brought about the crime. Participation means not only actively sharing in the final commission but in doing anything to aid and assist and to inspire or to encourage the conduct which caused it.

"So that, in dealing with the entire matter, it is up to the state to prove to you that the defendants, either or both, operated the car in consequence of which either by criminal negligence caused the death of this particular party.

"If you find the state has proven beyond a reasonable doubt all of the particular elements of the crime, then you will find the accused guilty as charged. If you find that they have not proven all the elements of the crime charged beyond a reasonable doubt, then you will find them not guilty as charged."

issue of the causation of the decedent's death was in broad general terms and that it made only a single reference to the particular facts of the case. The parties stipulated that the decedent died as a result of the accident. And the court carefully defined the causal connection necessary between the particular conduct and the death of the individual involved.[8] The extent to which the court comments on the evidence is largely a matter within its sound discretion. *State* v. *Guthridge,* 164 Conn. 145, 153, 318 A.2d 87, cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186; *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 583, 271 A.2d 94. The charge was carefully worded to cover each and every element that the state had to prove.

The defendant's final objection is that the trial court erred in its charge on abandonment. The defendant did not dispute his participation in the race, but rested his defense, in large part, on the claim that he abandoned the common enterprise. To prove abandonment, it is not enough to prove a secret change of purpose in one's own mind. It is necessary to establish the further fact that the one abandoning the common enterprise has informed his coparticipant of that change of purpose. *State* v. *Alterio,* 154 Conn. 23, 31, 220 A.2d 451; *State* v. *Allen,* 47 Conn. 121, 139; see *State* v. *Manganella,* 113 Conn. 209, 220, 155 A. 74; *State* v. *Feltovic,* 110 Conn. 303, 310, 147 A. 801. Although the defendant did not take the stand, he offered evidence that he had stopped and was waiting to make a turn at the

---

[8] The court stated: "That brings us to another element of the law. There must be a causal connection between the particular conduct and the death of the individual involved. When an injury follows or a death follows from an act of criminal negligence and the death is traceable in causal relationship to such an act, the act is said to be the proximate cause of the death."

time the collision occurred. Abandonment is a question of fact for the jury. *State* v. *Alterio, supra,* 31; *State* v. *McCarthy, supra,* 174.

The defendant argues that the court's charge on abandonment violated the dictates of *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508, in that it shifted the burden of proof to the defendant. *Patterson* v. *New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281, not *Mullaney* v. *Wilbur, supra,* is controlling here because the affirmative defense of abandonment does not serve to negate any element of the crime which the state must prove in order to convict, but constitutes a separate issue or circumstance on which the defendant is required to carry the burden of persuasion. Under *Patterson* (p. 209), a state can place the burden of proving an affirmative defense on the defendant as long as that burden does not include negating an element of the crime: "If the State . . . chooses to recognize a factor that mitigates the degree of criminality or punishment, we think the State may assure itself that the fact has been established with reasonable certainty. To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." Cf. *Poliafico* v. *United States,* 237 F.2d 97, 106 (6th Cir.), where affirmative action is required to show withdrawal from a joint enterprise. See also *Hyde* v. *United States,* 225 U.S. 347, 32 S. Ct. 793, 56 L. Ed. 1114; Wharton, Criminal Evidence (13th Ed.) § 124.

The crime of criminal negligence with a motor vehicle has two elements: criminal negligence and the causing of a death. The state offered evidence

on both elements from which a reasonable jury could have convicted the defendant. The court's charge[9] did not shift the burden of proving an element of the crime to the defendant; it merely put on the defendant the responsibility of showing that he changed his purpose.

In McCormick, Evidence (2d Ed.) § 346, it is stated that where the legislature defines a crime as including certain elements, A and B, and gives notice that proof beyond a reasonable doubt of those elements will subject the violator to punishment, the existence of an affirmative defense, C, does not detract from the given nature of the crime, but rather adds another factor to the case which, if proved, may exonerate the accused, so there is no point in requiring a rational connection between the existence of A and B and the nonexistence of C.

In *Leland* v. *Oregon,* 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302, the United States Supreme Court upheld the state rule that the affirmative defense of insanity must be proven by the defendant. After both *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368, and *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508, the Supreme Court refused to review *Rivera* v. *Delaware,* 429 U.S. 877, 97 S. Ct. 226, 50 L. Ed. 2d 160, where the state statute imposed an affirmative defense of insanity on a defendant, stating that the claim did not present a substantial federal question. Finally, in *Pat-*

---

[9] "You have heard something about abandonment. Abandonment is a question of fact for the jury. To prove an abandonment of an illegal activity in which the parties are engaged, it is not sufficient for a party to prove a secret change of purpose in his own mind. It was necessary for him to establish the further fact that he had, by word or deed, informed the other party of that change of purpose. You will consider the evidence before you and conclude whether or not you find such fact."

*terson* v. *New York,* supra, 207, the court refused to reconsider *Leland* and *Rivera.* This shifting of the burden does not violate the due process clause of the fourteenth amendment of the United States constitution. "Proof of the nonexistence of all affirmative defenses has never been constitutionally required." *Patterson* v. *New York,* supra, 210.

It may be argued that abandonment as an affirmative defense is inconsistent with analogous criminal code legislation enacted since *State* v. *Alterio,* supra, was decided, such as General Statutes § 53a-10, under which abandonment by an accessory is no longer an affirmative defense. We note, however, that the defendant here was informed against as a coprincipal and not as an accessory. We are not persuaded that the scope of a coprincipal and that of an accessory are sufficiently similar so as to compel us to read the provisions of one statute into another.

There is no error.

In this opinion the other judges concurred.