## STATE OF CONNECTICUT *v.* CURTISS HEINZ
## (2008)

DANNEHY, C.P.J., HULL and DUPONT, Js.

Argued January 4—decision released April 17, 1984

*Joseph J. Trantolo, Jr.,* with whom, on the brief, was *Thomas F. Kelsey,* for the appellant (defendant).

*Steven M. Sellers,* special deputy assistant state's attorney, with whom, on the brief, was *Rosita Creamer,* assistant state's attorney, for the appellee (state).

HULL, J. The defendant appeals[1] from his conviction by a jury of tampering with physical evidence in violation of General Statutes § 53a-155 (1).

Viewing the evidence most favorably to sustaining the verdict, a jury could reasonably have found the following facts. The defendant was the owner and permittee of the Venus Lounge on Main Street in East Hartford. On February 22, 1981, at approximately 11:30 p.m., a scantily clad dancer was performing to music on a stage about ten feet from the bar. The defendant was sitting at the end of the bar nearest the stage and could see what thereafter happened. A female customer, Paula Cochefski, approached the stage and got into an argument with the dancer, Luisa Luna. As Anita Purinton, a friend of Cochefski, stepped between Luna and Cochefski, Luna drew a knife and stabbed Purinton in the shoulder.

Immediately thereafter, the house bouncer took the knife away from Luna. After two to three minutes, the bouncer handed the knife to the defendant who had requested it. The defendant put the knife in his back pocket. The knife was a folding knife with a brown handle. When taken from Luna, it was open, showing a six inch blade. When the defendant put the knife in his

---

[1] This appeal was originally filed in the Appellate Session of the Superior Court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3 (c).

back pocket it was closed. The defendant then took Luna to a storage room in the building. When Purinton was removed to the ladies room, an eyewitness to the entire event, Harold Cooney who was a patron, went in to assist her. The defendant was also present at that time. He did not want to call an ambulance or the police, but preferred to handle the whole matter himself. Officer Steven Nettleton of the East Hartford police, having been alerted by a passing motorist, arrived at the Venus Lounge at 1:39 a.m. He approached the defendant who took him to the ladies room where he saw Purinton's wounds. The defendant told Nettleton that he had the perpetrator in a storage room. At this time, Nettleton asked the defendant where the knife was and, after ignoring the first question, the defendant, on being asked again, replied that he did not know.

Before entering the storage room to assist in the apprehension of Luna, Sergeant Paul Land of the East Hartford police department asked the defendant for the knife. The defendant replied that he did not know where the knife was. Thereafter, Sergeant Roger Boucher of the East Hartford police department asked the defendant about a knife used in the assault incident. The defendant replied that he had no knowledge of any such weapon. Cooney, who overheard the defendant's response, stated that the defendant was a liar and that the knife was in the defendant's back pocket. Boucher again asked the defendant for the knife. The defendant took a knife from his right rear pocket and handed it to Boucher stating "I believe this is what you're looking for." Fifteen minutes to half an hour had elapsed since Nettleton first asked for the knife.

The defendant was charged in a three count information with the crimes of tampering with physical evidence in violation of General Statutes § 53a-155; hindering prosecution in violation of General Statutes

§ 53-167; and interfering with a police officer in violation of General Statutes § 53a-167a. The court, *B. O'Neill, J.*, dismissed the second and third counts on motion and thereafter the defendant was tried by a jury and convicted on the count of tampering with physical evidence.

The defendant stressed three main issues at oral argument: (1) the admission of the knife into evidence; (2) claimed errors in the charge as to abandonment and intent; and (3) the state's failure to prove the defendant guilty beyond a reasonable doubt.

I

At trial, the state, over the defendant's objection on the grounds of irrelevance, prejudicial effect, and chain of custody, was permitted to put into evidence the knife which the defendant had given to the police on the night of the stabbing.

The court admitted the knife as an exhibit for the limited purpose of showing that it was the knife received from the defendant. The state did not claim it had been used in the stabbing. The defendant argued that since the knife was not offered as the one used in the stabbing, it was irrelevant. The short answer is that the knife, under the circumstances of this case, was highly relevant under General Statutes § 53a-155[2] as to whether, believing that an official proceeding was about to be instituted, the defendant concealed anything with the purpose to impair its availability in such proceed-

---

[2] General Statutes § 53a-155 provides as follows: "(a) A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding; (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such official proceeding.

"(b) Tampering with or fabricating physical evidence is a class D felony."

ings. To prove a violation of this statute, it was not necessary to prove that the knife actually was the one used in the stabbing.

The defendant likewise vigorously claims that the prejudicial effect of the admission of the knife outweighed its probative value. The defendant's reliance on *State* v. *Onofrio,* 179 Conn. 23, 425 A.2d 560 (1979) is misplaced. In *State* v. *Onofrio,* supra, the Supreme Court ordered a new trial because photographs of weapons were introduced which the state did not claim had anything to do with the offense charged. The knife in this matter is probative of whether the defendant intended to conceal it for the purpose of impairing its availability in an official proceeding. In determining the admissibility of such evidence, the court must consider whether its prejudicial tendency outweighs its probative value. *State* v. *Bell,* 188 Conn. 406, 413, 450 A.2d 356 (1982). The jury knew that a knife was used and, therefore, the admission of a knife, not even claimed to be the knife used in the stabbing, cannot be considered inflammatory or particularly prejudicial. On the contrary, it was a key element of the state's case. In order to meet its burden of proof, the state was forced to produce the knife.

The trial court had discretion as to whether to admit the knife and the exercise of such discretion is subject to reversal only where an abuse of discretion is manifest, or where injustice appears to have been done. *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980). We find, on the record before us, no abuse of discretion nor that any injustice was done.

Finally, the defendant challenges the chain of custody of the knife. The state's burden with respect to the chain of custody of a substance is met by a showing that there is a "reasonable probability" that the substance has not been changed in important respects.

*State* v. *Anonymous (83–FG),* 190 Conn. 715, 725, 463 A.2d 533 (1983); *State* v. *Nieves,* 186 Conn. 26, 31 n.4, 438 A.2d 1183 (1982); *State* v. *Jones,* 167 Conn. 228, 238–40, 355 A.2d 95 (1974); *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903 (1972). An object connected with the commission of a crime must be shown to be in substantially the same condition as when the crime was committed before it can be properly admitted into evidence. *State* v. *Johnson,* supra, 232. The state is not required or compelled, however, to prove each and every circumstance in the chain of custody beyond a reasonable doubt; *State* v. *Jones,* 167 Conn. 228, 239, 355 A.2d 95 (1974); nor must the state exclude or disprove all possibility that the article has been tampered with. *State* v. *Anonymous (83–FG),* supra, 725; *State* v. *Addazio,* 169 Conn. 416, 421, 363 A.2d 153 (1975); *State* v. *Johnson,* supra, 232–33.

There was evidence that before trial, the knife was kept in a locked cabinet in the property room of the East Hartford police department. The knife was examined only once, by defense counsel at the police station. The knife matched the description in the police report. It had not changed since it was reluctantly handed over to the police by the defendant. The court did not abuse its discretion in finding a satisfactory chain of custody so as to allow the admission of the knife.

A more serious question is raised by the defendant's claim that the court admitted the knife for a limited purpose, but later charged the jury that they could consider it as the knife used in the stabbing. At the time of its admission, the trial court carefully instructed the jury that its purpose was only to show it to be the same knife handed over to the police by the defendant.

In its charge, the court did not repeat the limiting instruction. After reviewing the evidence concerning the knife, the court charged as follows: "However, if

you find after carefully considering all the evidence presented in the course of this trial that the defendant did in fact receive a knife from the doorman on that occasion, and if you further find, after carefully considering all the evidence presented in this trial, that such knife received on that occasion by the defendant from the doorman was the same knife which the doorman had just taken from the dancer, then you may consider such knife as the physical evidence, quote unquote, or thing, unquote, within the meaning of the statute in question, while considering all of said evidence in performing your duties here as jurors.

"If, however, as is your right, you find after carefully examining all the evidence presented in this trial that the defendant on that occasion received from the doorman a knife different from the knife used in the alleged stabbing incident on that occasion, or if you find that the defendant never received any knife from any person on that occasion, then you must find the defendant not guilty.

"Of course, if you find that it was the same knife given to the defendant which the doorman had just taken from the dancer, you must then go on to consider all of the necessary elements of the statute. That doesn't end your factual determination. But I instruct you as a matter of law that if you find, after considering all the evidence, that a different knife was given to the defendant from the knife that was used in the stabbing, or if you find that the defendant never received any knife from any person on that occasion, then you must find the defendant not guilty."

It is error to admit an exhibit, particularly a key exhibit such as the knife in this case, for one purpose and then to charge the jury that it may be considered

for another purpose.[3] The charge, however, was more favorable to the defendant than if consideration of the knife had been limited in the charge as was originally done because it required the state to prove that the knife was the one used in the stabbing.

It must be determined, concerning instructions in a criminal case not involving a constitutional question, if it is reasonably probable that the jury had been misled. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982); *State* v. *Wilkinson,* 176 Conn. 451, 454, 408 A.2d 232 (1979); *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 (1975). Under the circumstances of this case, we conclude that it was not reasonably probable that the jury was misled. Any error, therefore, in the charge as given pertaining to the knife was harmless error.

## II

Counsel for the defendant, citing *State* v. *Manganella,* 113 Conn. 209, 219–20, 155 A. 74 (1931), requested a charge on abandonment which the court refused. The Connecticut Supreme Court recognized the affirmative defense of abandonment in *State* v. *Wilkinson,* supra, 464. The defendant did not claim the defense of abandonment at the trial.

"An affirmative defense is one that admits the doing of the act charged, but seeks to justify excuse or mitigate it." 21 Am. Jur. 2d 338, Criminal Law § 183; see *Halko* v. *State of Delaware,* 54 Del. 180, 175 A.2d 42 (1961).

In *State* v. *Wilkinson,* supra, 463, the court specifically found that the defendant did not dispute his participation in the crime. Similar findings were made in

---

[3] Where evidence is admitted for a limited purpose, the trial judge must instruct the jury to consider the evidence only for that limited purpose. 1 Wharton, Criminal Evidence (13th Ed.) § 161.

claiming abandonment in *State* v. *Alterio,* 154 Conn. 23, 30, 220 A.2d 451 (1966), where abandonment was claimed as a defense. At no time did the defendant in this case admit that he committed the act charged. Thus, he was not entitled to an abandonment charge.

Concerning intent, the court told the jury that the second element of the crime was whether the defendant concealed the knife with the purpose to impair its availability. Shortly thereafter, in the same section of the charge, the court charged that if the jury found that the defendant did in fact hide the knife, the state has satisfied its burden as to the second element of concealment. The defendant excepted to the charge on the basis that the court had failed to explain to the jury that any accidental or unintentional interference with the knife did not constitute a violation of the tampering statute. The defendant claims that this failure deprived him of proper instructions on the element of intent.

After the portion of the charge on concealment was given, the court went on to define the third element of the crime: "A third of the necessary elements to constitute the crime with which the accused is charged is that he concealed the knife used in said assault with purpose to impair its availability in such proceeding . . . ." The court, later in the charge, instructed the jury that purpose was equated with intent and that, in the absence of direct evidence, the jury should consider whether purpose had been proven by inference. In addition, the trial court read the language of General Statutes § 53a-155 (a) (1) six times to the jury, four of which were given at the end of the charge.

The question is whether these instructions, when read in the context of the entire charge, clearly informed the jury of the necessary elements of the crime charged.

"Jury instructions, of course, need 'not be exhaustive, perfect or technically accurate,' so long as they are 'correct in law, adapted to the issues and sufficient for the guidance of the jury.' *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953); see *Messina* v. *Iannucci,* 174 Conn. 275, 278, 386 A.2d 241 (1978); *State* v. *Sawicki,* 173 Conn. 389, 396, 377 A.2d 1103 (1977). An error of constitutional dimension in the instructions in a criminal case is reversible error when it is reasonably possible that the jury were misled by the instructions. *State* v. *Ruiz,* 171 Conn. 264, 273–74, 368 A.2d 222 (1976); *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975)." *State* v. *Kurvin,* 186 Conn. 555, 572, 442 A.2d 1327 (1982). "The rule is well settled in this state that a charge does not rise or fall on individual, isolated sentences, but must be looked at as a whole." *State* v. *Wilkinson,* 176 Conn. 451, 454, 408 A.2d 232 (1979).

Looking at the court's charge as a whole, we conclude that it is not reasonably possible that the jury was misled by the instructions.

### III

The defendant claims that the state did not prove each and every necessary element of the crime charged beyond a reasonable doubt.

In effect, the defendant is asking this court to retry the facts which we cannot and will not do. From a careful examination of the record and the evidence in this case, we conclude that there was sufficient evidence from which a jury reasonably could find the defendant guilty beyond a reasonable doubt.

We have carefully considered each of the numerous other claims made by the defendant and find them to be without merit.

There is no error.

In this opinion the other judges concurred.