## State of Connecticut *v.* James D. Leroy
## (14879)

Peters, C. J., and Callahan, Borden, Berdon and Katz, Js.

Argued October 27, 1994—decision released January 31, 1995

1

*Jack W. Fischer*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Keith Duboff*, assistant state's attorney, for the appellant (state).

*Temmy Ann Pieszak*, assistant public defender, for the appellee (defendant).

CALLAHAN, J. The defendant, James Leroy, was convicted after a jury trial of assault in the second degree with a motor vehicle while intoxicated in violation of General Statutes (Rev. to 1985) § 53a-60d (a).[1] He appealed from the judgment of conviction to the Appellate Court, which reversed the judgment and ordered a new trial. The principal issue in this certified appeal[2] is whether the Appellate Court properly determined that the trial court violated the defendant's constitutional right to a fair trial when it instructed the jury that the defend-

[1] The Appellate Court incorrectly stated that the defendant was charged with violating General Statutes (Rev. to 1985) § 53a-60d, as amended by Public Acts 1985, No. 85-147, § 2, as the statute provides today. *State* v. *Leroy*, 33 Conn. App. 232, 233 n.1, 635 A.2d 305 (1993). In fact, the defendant was charged under General Statutes (Rev. to 1985) § 53a-60d, which provides in pertinent part: "ASSAULT IN THE SECOND DEGREE WITH A MOTOR VEHICLE WHILE INTOXICATED: CLASS D FELONY. (a) A person is guilty of assault in the second degree with a motor vehicle while intoxicated when, in consequence of his intoxication while operating a motor vehicle, he causes serious physical injury to another person. For the purposes of this section, 'intoxication' shall include intoxication by alcohol or by drug or both."

[2] We granted the state's petition for certification limited to the following issues: (1) "Did the Appellate Court properly conclude that the trial court's instruction on proximate cause constituted a violation of the defendant's constitutional rights?" and (2) "If the answer to question (1) is yes, has the state established harmlessness beyond a reasonable doubt?" *State* v. *Leroy*, 228 Conn. 922, 638 A.2d 36 (1994).

ant's conduct was the proximate cause of the victim's injuries if his conduct was "a substantial factor" in bringing about those injuries. We reverse the judgment of the Appellate Court.

The pertinent facts as set forth in the opinion of the Appellate Court are as follows. "On September 29, 1984, at approximately 3 a.m., the defendant, James Leroy, was involved in a two vehicle collision with Leslie Daniel in Enfield. The defendant's car was traveling east and Daniel's car was heading west on Shaker Road when the two cars collided. The area where the impact occurred was rural, dark and badly lit, with curves and hills. Ralph Adamczyk was the only eyewitness to the accident. He was traveling behind Daniel's car and observed both headlights of the defendant's oncoming car as it came around a corner. As the defendant's car approached, the driver's side headlight disappeared twice from Adamczyk's view. Both cars swerved to avoid a collision. Adamczyk spoke with and observed the defendant after the collision and did not consider him to be intoxicated. At the accident scene, police officers noted the smell of alcohol on the defendant, and the defendant had difficulty maintaining his balance and exhibited slurred speech. The defendant was unable to perform two field sobriety tests satisfactorily. The defendant's breath test yielded a blood alcohol reading of 0.215 of 1 percent, revealing that he had consumed between ten to thirteen beers.

"As a result of the accident, Daniel suffered serious injuries. She was unconscious from the time of the accident until October 19, 1984, and remained hospitalized until late November, 1984. Upon release from the hospital, Daniel's speech and memory were impaired, she could not walk or use her left arm, and her vision was limited. She received more than seven months of physical, occupational and educational rehabilitation therapy. Daniel's speech is no longer impaired and she has

relearned to read and write, but has not regained all of her memory. Daniel cannot walk or use her left arm or hand, and has impaired vision." *State* v. *Leroy,* 33 Conn. App. 232, 234–35, 635 A.2d 305 (1993).

The defendant subsequently was charged with assault in the second degree with a motor vehicle while intoxicated. At trial, the defendant offered evidence to prove that the accident had occurred on his side of the highway, and thus that it was Daniel, not he, who had crossed the center line and had caused the collision. At the conclusion of the evidence, the court instructed the jury, without objection from the defendant,[3] that if the defendant's conduct was "a substantial factor" in bringing about the victim's injuries, his conduct was the proximate cause of those injuries.[4] The jury

---

[3] Although the defendant conceded that his claim that the trial court improperly instructed the jury as to proximate cause was unpreserved, the Appellate Court held the issue to be reviewable under the test set forth in *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). *State* v. *Leroy,* supra, 33 Conn. App. 235.

[4] The trial court's entire jury instruction on proximate cause was as follows: "Now, as I previously instructed, the state must establish beyond a reasonable doubt that the alleged intoxication of the defendant caused the serious injury of another person. Therefore, if you find intoxication but also find that it was not *a substantial factor* in causing the alleged injuries of the victim, then the intoxication was a condition surrounding the injury, not a cause of it, and you must return a finding of not guilty.

"For the defendant to be found guilty, the state must establish beyond a reasonable doubt a cause or a relation between the accident caused by the defendant being intoxicated, and the injury it claims resulted from it. This causal connection must rest upon more than surmise, speculation or conjecture. You, as triers of the facts, are not to be concerned with possibilities but only with reasonable probabilities.

"In consideration of the causes of this accident and the result, you should keep in mind that all collisions that occur on the highways are not necessarily caused by the fault of some person. Accidents may happen when neither party is at fault.

"An accident which could not be prevented by the exercise of reasonable care and prudence is called an unavoidable accident, and if you believe from the evidence that this occurrence was of such a character, the defendant is entitled to a verdict of not guilty.

"As I have said, the state must prove that the defendant's intoxication proximately caused serious physical injury to Leslie Daniel. Proximately

returned a verdict of guilty, and the trial court sentenced the defendant to five years incarceration, execution suspended after two years, and five years of probation.

The defendant appealed from the judgment of conviction to the Appellate Court.[5] The Appellate Court determined that the trial court's instruction to the jury with regard to proximate cause[6] was improper because

caused is a direct cause. It's an act or a failure to act, followed in its natural consequence by a result, without the intervention of any other superseding cause.

"Whether the sequence of events is unbroken by any intervening cause, an act or a failure to act is a proximate cause of the result. Proximate cause, thus, is an act or a failure to act which is *a substantial factor* in producing the result.

"Now, the intoxication of the defendant need not be the sole proximate cause of the injuries. All that is required is that the intoxication of the defendant, if you find that he was intoxicated, be *a substantial factor* in bringing about the injuries to Leslie Daniel.

"Now, if you find that the defendant's intoxication—if you find intoxication, but if you find that such intoxication . . . was *a substantial factor*, then the state has met its burden in this element." (Emphasis added.)

[5] On appeal to the Appellate Court, the defendant claimed that the trial court improperly: (1) instructed the jury as to proximate cause; (2) denied a motion to strike expert testimony on the ground of lack of an evidentiary foundation; and (3) instructed the jury as to reasonable doubt thereby diluting the state's burden of proof. The Appellate Court considered only the first of these claims. *State* v. *Leroy*, supra, 33 Conn. App. 233–34. On remand, the Appellate Court will be required to consider the remaining two claims.

[6] Causation is an essential element of the crime of assault in the second degree with a motor vehicle while intoxicated. See General Statutes § 53a-60d. In order for legal causation to exist in a criminal prosecution, the state must prove beyond a reasonable doubt that the defendant was both the cause in fact, or actual cause, as well as the proximate cause of the victim's injuries. See W. LaFave & A. Scott, Criminal Law (1972) § 35, pp. 246–51. "In order that conduct be the actual cause of a particular result it is almost always sufficient that the result would not have happened in the absence of the conduct; or, putting it another way, that 'but for' the antecedent conduct the result would not have occurred." Id., p. 249. On the other hand, proximate cause requires that "the forbidden result which actually occurs must be enough similar to, and occur in a manner enough similar to, the result or manner which the defendant intended (in the case

it required the defendant's conduct to have been only *"a* substantial factor" in bringing about the victim's injuries rather than *"the* substantial factor" or *"the* predominating cause." (Emphasis added.) The Appellate Court concluded that the trial court's instruction did not comply with the language used by this court in *State* v. *Spates,* 176 Conn. 227, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979), and consequently violated the defendant's due process right to a fair trial. *State* v. *Leroy,* supra, 33 Conn. App. 238–40.

In *Spates,* we said that proximate cause "in the criminal law does not necessarily mean the last act of cause, or the act in point of time nearest to death. The concept of proximate cause incorporates the notion that an accused may be charged with a criminal offense even though his acts were not the immediate cause of death. An act or omission to act is the proximate cause of death when it substantially and materially contributes, in a natural and continuous sequence, unbroken by an efficient, intervening cause, to the resulting death. It is the cause without which the death would not have occurred and *the predominating cause, the substantial factor,* from which death follows as a natural, direct and immediate consequence." (Emphasis added.) *State* v. *Spates,* supra, 176 Conn. 233–34. The Appellate Court stated that although "[i]t is not crucial for jury instructions to include the exact language offered in *Spates,"* an instruction must not allow "a guilty verdict simply if the defendant's conduct was one of the many factors that caused the injuries." *State* v. *Leroy,* supra, 33 Conn. App. 239. The court concluded that

of crimes of intention), or the result or manner which his reckless or negligent conduct created a risk of happening (in the case of crimes of recklessness and negligence) that the defendant may fairly be held responsible for the actual result even though it does differ or happens in a different way from the intended or hazarded result . . . ." Id., p. 248.

"*Spates* requires that an accused's conduct be *the* predominating cause or *the* substantial factor of the resulting injuries and that this element be proven beyond a reasonable doubt. . . . As we stated, it is possible that an accused's conduct may be *a* substantial factor in resulting injuries, but not the predominating cause or *the* substantial factor. A jury, faced with these instructions, could reasonably convict without finding that the actions were the predominating cause or the substantial factor. Because the trial court's instructions to the jury did not provide a substantively accurate statement of the law on the essential element of causation, an issue strongly contested at trial, it is reasonably possible that the jury was misled in rendering the verdict." (Emphasis in original.) Id., 240. Accordingly, the Appellate Court reversed the judgment of the trial court, and remanded the case for a new trial. This appeal followed.

I

The state claims that the Appellate Court misapplied *Spates* and improperly determined that the trial court's jury instruction on proximate cause violated the defendant's constitutional rights. The state also argues that even if the trial court's instruction was incorrect, its error was harmless under the facts of this case. We agree that the Appellate Court misapplied *Spates*, and reverse the judgment without engaging in a harmless error analysis.

We begin by noting that an improper jury instruction as to an essential element of the crime charged may result in the violation of the defendant's due process right to a fair trial, and thus require the reversal of a conviction based upon that instruction. *State* v. *Allen*, 216 Conn. 367, 383, 579 A.2d 1066 (1990); *State* v. *Foster*, 202 Conn. 520, 537, 522 A.2d 277 (1987); *State* v. *Fleming*, 198 Conn. 255, 269–70, 502 A.2d 886,

cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). When reviewing the challenged jury instruction, however, we must "adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citations omitted; internal quotation marks omitted.) *Blanchette* v. *Barrett*, 229 Conn. 256, 280–81, 640 A.2d 74 (1994).

In order to determine whether the trial court's jury instruction was incorrect, it is useful to analyze our cases that have discussed proximate causation in criminal prosecutions. In *State* v. *Spates*, supra, 176 Conn. 229, the defendant had informed the victim and his wife that he intended to rob them. After the defendant had bound the victim and his spouse in the basement, the victim, who had previously had four heart attacks, suffered a heart attack and died. After the defendant was convicted of manslaughter in the first degree by a jury, he challenged on appeal the trial court's jury instruction as to causation. Although we did indicate that an act is the proximate cause of a victim's injuries when it is "the substantial factor" or "the predominating cause" of the injuries, those words must be viewed within the framework of the entire *Spates* opinion.

First, we note that in *Spates*, the defendant's challenge to the jury instruction had nothing to do with whether "the substantial factor" or "a substantial fac-

tor" language should have been used. Rather, the defendant argued that the instruction given did not explain to the jury his view that there must be an actual infliction of external physical injury upon the victim by the defendant before a causal connection between the defendant's conduct and the victim's death may be found to exist. *State* v. *Spates*, supra, 176 Conn. 231. Our holding was not that the trial court was required to state that the defendant's conduct was "the substantial factor" or "the predominating cause" of the victim's injuries, but rather was that "[i]t is unnecessary for 'proximate cause' purposes that the particular kind of harm that results from the defendant's act be intended by him. In many situations giving rise to criminal liability, the harm that results is unintended, yet is directly or indirectly caused by an act of the defendant. In such cases, where the death or injury caused by the defendant's conduct is a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible. . . . A review of the trial court's charge discloses that it instructed the jury substantially in accord with those principles." Id., 234–35.

Second, the actual jury instruction that we approved in *Spates* not only lacked the words "the substantial factor" or "the predominating cause," but also expressly permitted a guilty verdict even if the defendant's conduct was not the only cause of the victim's death.[7] We concluded that "[t]he test to be applied to

[7] The jury instruction stated, in part, that "[i]f the defendant's conduct, in his relations with [the victim], inflicted upon the latter physical or emotional injury or stress or trauma which was in this sense the proximate cause of his death, then the defendant's conduct, under the circumstances, caused his death and satisfied this element of the law or charge upon this offense, *even though such physical or emotional stress or trauma were not the only cause of [the victim's] death,* and although [the victim] had already been enfeebled by poor physical condition of severe heart disease, and even though it is probable that a person in sound physical condition would not have suc-

any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result. . . . When considered in this context, the instruction complained of was not erroneous." (Citation omitted.) Id., 235.

Third, it is significant that the *Spates* decision cited *State* v. *Tomassi*, 137 Conn. 113, 75 A.2d 67 (1950), as controlling authority. In *Tomassi*, the defendant was charged with murder. At trial, he contended that it was not the bullet wound that he had inflicted upon the victim that had caused the victim's death, but rather the treatment that the victim had received from the doctors at the hospital. The trial court instructed the jury as to proximate cause, in part, that "under the law an injury is the cause of a death if the death follows—if the death naturally ensues from it. It is not necessary that it be the immediate cause of death, provided that it has operated to produce the immediate cause. If a wound starts in operation a chain of circumstances and conditions which ultimately result in death, then under the law the wound is regarded as the cause of the death. On the other hand, even though death follows a wound, in point of time, if the death is brought about by some cause independent of the wound, if it would have happened, that is, if there had been no wound, then of course the wound is not the cause of the death. . . .

cumbed from the effects of the defendant's conduct upon him, and even though it is probable that the defendant's conduct only hastened [the victim's] death, or that he would have died soon thereafter from another cause or causes. Let us be very plain upon this point. So long as [the victim's] admittedly and recognizable predisposition of heart disease *was not the only substantial factor in bringing on his death,* that condition . . . does not operate to prevent the defendant's responsibility for his conduct having caused [the victim's] death. If the defendant's unlawful conduct . . . set in operation factors . . . such conduct establishes the defendant's guilt . . . even though his conduct or the factors he set in motion *were not the only cause of [the victim's] death* . . . ." (Emphasis added.) *State* v. *Spates,* Conn. Supreme Court Records & Briefs, October Term, 1978, Pt. 4, Defendant's brief pp. 29–30.

In other words, it is not essential that the wound be the sole cause of the death. It is not essential that it be the immediate cause of the death. *It is essential that it be a substantial factor in bringing about the death. . . .* So where a wound, either operating directly or indirectly, by causing some other condition which produces death, *has been a substantial factor in causing a death,* it is still to be regarded as the cause of the death even though some negligence in the treatment of the wounded man by physicians and others is also a contributing factor." (Emphasis added.) *State* v. *Tomassi,* Conn. Supreme Court Records & Briefs, April Term, 1950, Pt. 2, Record, pp. 32–34. On appeal, we approved this instruction, stating that "[t]he court's instructions gave the defendant all he was entitled to and were correct." *State* v. *Tomassi,* supra, 137 Conn. 119.

On January 16, 1979, more than two months after our decision in *Spates,* we decided *State* v. *Wilkinson,* 176 Conn. 451, 408 A.2d 232 (1979). In *Wilkinson,* we upheld a challenged jury instruction, but instead of relying on the language in *Spates* to do so, we stated that "[t]he charge given by the trial court was taken from [*State* v. *Alterio,* 154 Conn. 23, 220 A.2d 451 (1966),] which outlines the law in this state on proximate cause and concurrent liability." Id., 461. The *Alterio* charge stated, in part, that "[p]roximate cause is that cause or act which, as a natural consequence, unbroken by any other intervening act, produced the death and without which the death would not have resulted. In other words, the act, to be the proximate cause, must be *a substantial factor* in producing the death and to be *a substantial factor* in producing the death, the act must have continued down to the moment of the injury or the death or at least down to the setting in motion of the final active, injurious force which materially produced or preceded the death. . . . So, you see, with

respect to the cause and effect, ladies and gentlemen, you have a factual situation. It is up to you to evaluate the evidence and determine wherein you think the truth lies and after you have determined that, then you will determine whether or not either or both of these particular operators were *substantial factors* in producing this particular death." (Emphasis added.) *State* v. *Alterio,* Conn. Supreme Court Records & Briefs, May Term, 1966, Record, pp. 40–41.

Moreover, in the years after *Spates,* this court repeatedly has affirmed the law as to proximate cause as stated in *Tomassi* and *Alterio.* In *State* v. *Jacobs,* 194 Conn. 119, 125–26, 479 A.2d 226 (1984), cert. denied, 469 U.S. 1190, 105 S. Ct. 96, 83 L. Ed. 2d 968 (1985), we stood by that portion of the *Tomassi* charge that required that a wound be "a substantial factor" in causing a death to be the proximate cause, when we concluded that proximate cause existed in that case because "[t]he wound itself contributed to the victim's death in *a substantial way* . . . ." (Emphasis added.) Likewise, in *State* v. *Pellegrino,* 194 Conn. 279, 480 A.2d 537 (1984), the defendant was charged with manslaughter in connection with the death of his accomplice. The defendant argued that "where an accomplice accidentally kills himself, there should be no criminal responsibility because a defendant's conduct would not then be a substantial factor in causing the accomplice's death." Id., 295. We disagreed, stating that "[a]lthough we agree that a defendant's conduct must be *a substantial factor* in bringing about his accomplice's death, we do not agree that the jury could not have reasonably concluded that the defendant Pellegrino's conduct was *a substantial factor* in causing [the victim's] death." (Emphasis added.) Id.

In view of the fact that *Spates* cited *Tomassi* as controlling authority for its definition of proximate cause,

and upon review of the actual jury instruction approved in *Spates*, we conclude that in this case the trial court's charge that permitted a guilty verdict if the defendant's conduct was "a substantial factor" in causing the victim's injuries, and that permitted a guilty verdict even if the defendant's conduct was only one of several factors that caused the victim's injuries, was proper. The cases that we have decided subsequent to *Spates* demonstrate that we have never attached talismanic significance to the words "the substantial factor" and "the predominant cause." Rather, those words merely reflect our repeated insistence that when several factors contribute, in a chain of events, to cause a victim's injury, in order to be the proximate cause of that injury, the defendant's conduct must have been a cause that necessarily set in operation the factors that accomplish the injury. In short, a jury instruction with respect to proximate cause must contain, at a minimum, the following elements: (1) an indication that the defendant's conduct must contribute substantially and materially, in a direct manner, to the victim's injuries; and (2) an indication that the defendant's conduct cannot have been superseded by an efficient, intervening cause that produced the injuries. See *State* v. *Spates*, supra, 176 Conn. 234. Because the trial court's charge complied with these mandates, we conclude that the Appellate Court's finding of error was improper.

II

The defendant argues, however, that the Appellate Court correctly determined that the trial court's jury instruction was erroneous because the legislature, in 1985, in the process of amending § 53a-60d by No. 85-147 of the 1985 Public Acts, specifically deleted the language "a substantial factor" from a draft amendment. We disagree.

Although in 1985 the General Assembly revised § 53a-60d,[8] it is undisputed that the "legislative history of this amendment reveals that the modification . . . was not made to change any previously defined burden of proving causation." *State* v. *Kwaak*, 21 Conn. App. 138, 143, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990). The revision was intended "to remove the language in [§ 53a-60d] that referred to a person's being 'intoxicated' and instead to insert the requirement that a person has to be 'under the influence' in order to 'get tougher on drunk drivers' and to avoid the result reached in an uncited court decision where an individual escaped liability under the law because the court found that the individual was not 'intoxicated' even though he may have been under the influence." Id., 144.

The defendant points out that in the process of amending § 53a-60d, a draft amendment initially contained the phrase "a substantial factor." The defendant also points out that the phrase was later specifically excised by a House Amendment.[9] Although we do not

---

[8] The statute's language was changed, in part, from "in consequence of his intoxication" to "as a consequence of the effect of such liquor or drug."

[9] The legislative commissioner had inserted the language "a substantial factor" into the proposed House Bill. House Amendment "A" changed the "a substantial factor" language in the proposed bill back to the original "consequence of." Representative William A. Wollenberg proposed the amendment to this bill, and spoke on its behalf as follows: "Mr. Speaker, in the file copy, the language of in consequence of was changed to substantial cause. Now, substantial cause is a lesser, there is a lesser burden to prove the fact that the individual was under the influence under substantial cause, in consequence of, rather than substantial cause.

"It's been brought to our attention that perhaps it should be a more difficult burden to prove, and we have asked that the language be changed from 'substantial' to 'in consequence of.' It does require that the entire language of this statute be moved around a little because the 'substantial' and 'in consequence of' are different terms entirely.

"Basically it makes it more difficult under in consequence of.

* * *

"Through you, Mr. Speaker. We had substituted language. We had substituted the word, 'substantial' rather than words, 'as a consequence of.'

disagree with the defendant's version of the drafting history of the 1985 amendment, we cannot accept the defendant's explanation that the reason for the removal

---

As a consequence of is a stricter burden to prove by a prosecutor than substantial. It would have been easier to prove that someone was under the influence if the substantial language were in there, rather than, 'in consequence of.' 'Substantial' could be a degree, not reaching as high as 'in consequence of.'

\* \* \*

"Through you, Mr. Speaker. I can't give you exact percentages because I don't know what the percentage of substantial is, but if we are looking from 50 to 100%, substantial might be 70%. In consequence of might be 80 or 90%.

\* \* \*

"Mr. Speaker. If I may, just to clarify and I understand the problem here. The causation of the damage, the death or damage in the case of assault, the causation may have been in part because of the intoxication or being under the influence, and in part for some other reason.

"Under the in consequence of rises above the proof of substantial." 28 H.R. Proc., Pt. 9, 1985 Sess., pp. 3124–28.

On the other hand, Representative Robert M. Frankel understood the reason for the removal of the word "substantial" as follows: "Yes, Mr. Speaker, I'd like to attempt to try to assist the chamber in understanding the reason for the amendment. The file copy was designed to correct a problem that arose from a court decision. It was an attempt to use the right definition for under the influence, because in that court case, someone escaped from being found guilty because the statute that is on the books today, talks about intoxication, instead of about the words, 'under the influence,' and that is what the file copy tried to do, to put the words, 'under the influence' in, and take the word 'intoxication' out, because the courts interpreted them differently, and the file copy would indeed make the law more tough on drivers, but I believe inadvertently [the legislative commissioner's office] threw in some new language that the committee didn't consider, and they threw in the words, 'substantial,' and we have no definition for substantial.

"Is it 20%, is it 50%, is it 60%? It's something more than a little, but is it 70 or 80. We don't know, and I don't think it was appropriate to put it there. The existing law says, 'in consequence of,' and that is what Rep. Wollenberg's amendment would do, would use that same language. But it would still leave the file copy intact to toughen up our drunk driving laws to do what was intended by the committee, and to correct the problem that that court decision brought about.

"And so I would urge the membership to support the amendment, which I think will make the file copy to do what the committee intended, toughen

of the phrase "a substantial factor" was that it set too low a standard of proximate cause. Instead, we conclude that the legislative history is unclear. On the one hand, Representative William A. Wollenberg argued that the word "substantial" would impose upon the prosecution a lesser burden of proof with respect to causation than would "as a consequence of."[10] On the other hand, Representative Robert M. Frankel simply thought that the word "substantial" was too ambiguous and difficult for a trial court to define. Neither representative, however, commented as to the dispositive issue here—the difference between the phrases "a substantial factor" and "the substantial factor."

In view of the conflicting legislative history, we decline to adopt the import ascribed by the defendant to the removal of "a substantial factor" from the draft bill. Our decisions permit a jury to find that a defendant's conduct was the proximate cause of a victim's injuries if the conduct was a direct and substantial factor in bringing about the victim's injuries, and if there was no superseding intervening and efficient cause. We are unpersuaded that anything said in the proceedings in the General Assembly concerning No. 85-147 of the 1985 Public Acts, which was proposed to remedy an unrelated aspect of § 53a-60d, changed that rule of law.

---

up our laws, but not interject and introduce something brand new called 'substantial' as opposed to 'in consequence.' It's technical, it's legal, but I think if we put this new language in, that inadvertently slipped into the file copy, we're going to have an enormous problem in interpreting what is something even beyond civil law, below civil law, in terms of its consequence. . . ." Id., pp. 3129–31.

Representatives Wollenberg and Frankel were the only two legislators who spoke to the substance of the amendment.

House Amendment "A" was adopted and ruled technical. Id., p. 3132.

[10] Notably, Representative Wollenberg's criticism was directed at the *word* "substantial," not at the *phrase* "a substantial." See footnote 9. Thus, Representative Wollenberg's statements, even if taken as definitive regarding the omission of "a substantial," do not support the defendant's argument.

Because the trial court's jury instruction complied with these essential mandates, the Appellate Court incorrectly reversed the defendant's judgment of conviction.

The judgment of the Appellate Court is reversed, and the case is remanded to that court for consideration of the defendant's remaining claims.

In this opinion the other justices concurred.